**Billie Sue JAYNES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 68524.

Court of Criminal Appeals of Texas,
En Banc.

July 11, 1984.

Clifford W. Brown, Mike Brown, Lubbock, for appellant.

John T. Montford, Dist. Atty. and Jim B. Darnell, Asst. Dist. Atty., Lubbock, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

McCORMICK, Judge.

This is an appeal from a conviction for failure to stop and render aid. Punishment was assessed at eight years, probated.

Appellant argues that the evidence is insufficient to show that she drove the motor vehicle involved in the offense and that she acted knowingly in failing to stop and render aid. Article 6701d, Sections 38 and 40, V.A.C.S. The indictment alleged in pertinent part that appellant:

"... did then and there drive and operate a motor vehicle on a public highway and while driving said motor vehicle the Defendant did then and there knowingly strike a person to-wit: Ocie Franklin, Jr., and did then and thereby knowingly injure the person of the said Ocie Franklin, Jr., and the said BILLIE SUE JAYNES did then and there unlawfully fail to stop and render reasonable assistance to the said Ocie Franklin, Jr. in that the said BILLIE SUE JAYNES did then and there knowingly fail to stop and carry and knowingly failed to make arrangements for the carrying of the said Ocie Franklin, Jr. to a physician for medical treatment, it being apparent that such treatment was necessary by reason of the injuries received as aforesaid."

Ocie Franklin, Jr., the complainant, testified that he was standing beside his parked car talking to Curtis Jones when he was struck by a passing brown GMC pickup truck. The impact knocked Franklin over the front of his car and onto the ground. Franklin testified that after he had been hit he heard the truck back up and then speed off. Franklin did not see the driver of the pickup and could not identify appellant as the driver of the pickup.

Curtis Jones testified that he was standing in front of his house located on Teak Avenue talking to the complainant when a pickup truck drove by and struck the complainant's car. The complainant was standing next to the open door on the driver's side of his car and the impact of the collision threw him over the front of his car. Jones testified that the truck was driven by a white female and there was only one person in the truck. Jones related that after the truck had struck the complainant, the truck stopped, backed up and then sped off. Jones testified that he copied down the license plate number on the truck. He then ran into his house. When he came out, he saw the pickup truck parked a block down the street. Jones could not identify appellant as the driver of the truck.

Milton Crittenden testified that he was on his way to work on the morning of the offense. He was stopped at a stop sign on Teak Avenue when the appellant walked in front of his truck and around to the passenger side and climbed inside. Crittenden looked back in the direction from where appellant had come and saw a GMC pickup truck parked in the road. The front radiator of the GMC pickup truck was damaged and water was draining from the radiator. When appellant got into Crittenden's truck, she said, "Let's go." Crittenden asked appellant where she wanted to go and she told Crittenden to take her to the "flats." Crittenden replied that he could not take her any place because he was on his way to pick up a co-worker and then they had to go to work. The appellant refused to get

out of Crittenden's truck so he drove to his co-worker's house about three blocks away. As he was waiting in front of his co-worker's house, a bus pulled up beside Crittenden's truck and the bus driver told Crittenden that appellant had run over someone a few blocks down Teak Avenue. Appellant again told Crittenden, "Let's go." Crittenden again tried to get appellant to exit his vehicle. When she refused, he headed off to work. As they were driving beside Ella Isles elementary school, Crittenden stopped again and appellant finally got out of the truck. Crittenden testified that when appellant entered his truck she appeared to be "pretty loaded."

Ema Alexander, the director of a day care center near Ella Isles elementary school, testified that between 8:00 a.m. and 9:00 a.m. on the morning of the offense the appellant came to the day care center and asked to use the telephone. Appellant told Alexander that two men in a truck had dropped her off and she needed to call her mother for a ride. Appellant had trouble dialing the correct number and eventually Alexander dialed the number for her. After completing the call, appellant was told to wait in the front of the day care center. A few minutes later, someone found appellant passed out on the front porch of the center. Alexander testified that she thought appellant was high on something. Alexander called police and appellant was taken away in an ambulance.

Officer Tim Smith of the Lubbock Police Department testified that he responded to an accident call on the day of the offense. When he arrived at the scene, he found the complainant lying on the ground in front of his car. The car had been knocked part way onto Curtis Jones' lawn and the car had heavy damage to its left rear end. After Jones gave him a description of the vehicle involved in the accident, Smith noticed a vehicle matching that description parked in the middle of the street approximately a block north of where the accident occurred. This vehicle had extensive damage to its right front end. After completing his on-the-scene investigation, Officer Smith went to the hospital to see the com-

plainant. While at the hospital, some two hours after he initially responded to the call, Officer Smith encountered appellant. Appellant was having trouble walking, her eyes were red and occasionally seemed to roll back, and she appeared to have no control over coordination. Officer Smith testified that in his opinion appellant was intoxicated or high. In addition, Officer Smith noticed needle marks on appellant's arms and around her toes.

Finally, Dr. Gerald Woolam testified that he treated the complainant for injuries suffered as a result of this offense. Woolam diagnosed the complainant as having a blunt injury to the left side of the abdomen and flank. Appellant was hospitalized for forty-eight hours.

Testimony was introduced to show that the owner of the brown GMC pickup truck involved in the accident was Genita Harris, appellant's mother.

Appellant testified that she remembered nothing that occurred on the day of the offense. She related that the last thing she remembered was riding around with a friend. The next thing she remembered was waking up in the hospital.

The relevant question in reviewing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Wilson v. State,* 654 S.W.2d 465 (Tex.Cr.App.1983); *Denby v. State,* 654 S.W.2d 457 (Tex.Cr.App.1983); *Freeman v. State,* 654 S.W.2d 450 (Tex.Cr. App.1983). As noted above, appellant contends that the evidence was insufficient to prove that she drove the vehicle. We disagree. Testimony was presented to show that a white female was driving the pickup and that she was alone in the truck. The truck, later identified as belonging to appellant's mother, was found a short distance from the accident scene and appellant was spotted nearby. We find that the evidence excluded every other reasonable hypothesis and is sufficient to show she was

driving the truck at the time of the accident.

Appellant also alleges that the evidence is insufficient to show that she knowingly struck and injured the complainant, and thus knowingly failed to stop and render aid.

In *Goss v. State*, 582 S.W.2d 782 (Tex.Cr. App.1979), this Court found that:

"... the culpable mental state thereby required for the offense of failing to stop and render aid is that the accused had knowledge of the circumstances surrounding his conduct [V.T.C.A., Penal Code, Sec. 6.03(b)], i.e., had knowledge that an accident had occurred." 582 S.W.2d at 785.

This court has held that knowledge of the collision upon the part of the appellant can be shown by circumstantial evidence. *Harrison v. State*, 151 Tex.Cr.R. 606, 210 S.W.2d 591 (1948). In *Miles v. State*, 123 Tex.Cr.R. 501, 59 S.W.2d 403 (1933), this Court held that the nature of the victim's injuries can be used to show that appellant knew he had injured someone.

In the instant case the evidence shows that the appellant's truck struck the victim's car which was parked along side the roadway. The force of the impact pushed the complainant's car halfway into Curtis Jones' front yard. The complainant, who was standing beside the open door of his car, was thrown in the air and landed in front of his car in Jones' yard. The complainant's car suffered heavy damage to the rear end; appellant's truck suffered heavy damage to its front end and ceased running approximately one block from the scene of the accident. Jones testified that, after the truck struck the complainant's car, the truck stopped, backed up and then took off. Furthermore, after the appellant's truck became disabled, she abandoned the truck and fled the area by hitching a ride with a passing motorist. We feel that all of these circumstances, when taken together, would have entitled a rational trier of fact to find that appellant knew an accident had occurred and thus knowingly failed to stop and render aid. See: *Tinaje-*

*ro v. State*, 362 S.W.2d 860 (Tex.Cr.App. 1962); *Swanner v. State*, 170 Tex.Cr.R. 591, 342 S.W.2d 577 (1961); *Taylor v. State*, 149 Tex.Cr.R. 552, 196 S.W.2d 925 (1946); *Bell v. State*, 130 Tex.Cr.R. 90, 92 S.W.2d 259 (1936). Appellant's second ground of error is overruled.

In her first ground of error, appellant contends that the indictment contains fundamental error in that it contains no allegation of the occurrence of a collision involving the vehicle which she was driving. It merely alleges that while driving a motor vehicle she struck the complainant. Appellant maintains the indictment does not allege an offense under the laws of this State.

As noted above, the indictment clearly stated that the appellant struck the complainant while driving a motor vehicle and thereafter failed to stop and render aid to the injured complainant. True, it would have been preferable had the indictment contained a specific allegation that a collision occurred involving the vehicle appellant was driving. However, we feel that it was clear from the indictment that the State was alleging that such a collision occurred; thus, Article 6701d, Sections 38 and 40, supra, were complied with. The omission of a word or words in an indictment is not fatal if that part omitted is not essential to the certainty necessary in the description of the offense and does not affect the meaning. *Ansley v. State*, 468 S.W.2d 862 (Tex.Cr.App.1971). We find no fundamental error. This ground of error is overruled.

The court's charge instructed the jury that if appellant did not know that she had struck the complainant with her automobile, that that would constitute an affirmative defense. The court then went on to instruct the jury that neither voluntary intoxication nor temporary insanity of mind caused by intoxication could constitute any defense. The appellant objected to this latter part of the instructions, arguing that this constituted a comment on the weight of the evidence by the court and unduly limited her defense in this case because the

appellant was in no way asserting that her lack of knowledge was due to voluntary intoxication or temporary insanity caused by intoxication. Appellant requested that the following instruction be substituted:

"Testimony and evidence has been introduced before you that on the occasion in question, that the Defendant had no knowledge that an accident had occurred, and that she had no knowledge of any matters which occurred on June 8, 1979. If you believe this evidence or if this evidence raises a reasonable doubt in your mind as to the guilt of the defendant, then you will acquit the Defendant and so say by your verdict."

During the State's case in chief, Dr. Arthur Howard testified that he examined appellant in the emergency room of St. Mary's Hospital on the day of the offense. Dr. Howard testified that the appellant was "slouching around, and very uncooperative, sort of disoriented, quite belligerent." He testified that appellant related to him that she had been drinking and had been taking some medication. Dr. Howard testified that appellant showed no signs of injuries relating to the accident. Having made the diagnosis that appellant was suffering from a drug overdose, the doctor treated appellant by pumping her stomach out and then placing her in the intensive care unit.

■ Article 36.14, V.A.C.C.P., requires the trial judge to deliver to the jury a charge which distinctly sets forth the law applicable to the case. V.T.C.A., Penal Code, Section 8.04(a), states that voluntary intoxication is not a defense to the commission of a crime. Thus, when evidence came in which might have led the jury to believe that appellant was intoxicated at the time of the offense and this might have contributed to her defense of lack of knowledge of the offense, it was proper for the court to instruct the jury on the appropriate law. In view of the evidence before the jury, this was not error. *Valdez v. State*, 462 S.W.2d 24 (Tex.Cr.App.1971). The jury was free to find that appellant had no knowledge of the accident as long as they did not attribute that lack of knowledge to intoxication. Cf. *Evilsizer v. State*, 487

S.W.2d 113, 116 (Tex.Cr.App.1972). We do not perceive this to be a comment on the weight of the evidence. This ground of error is overruled.

In her last ground of error, appellant argues that the trial court erred in sentencing appellant to a term of confinement in excess of the maximum term of imprisonment authorized by statute and by placing her on probation for a term of years in excess of the maximum term of imprisonment authorized by statute. Appellant was convicted for violating Article 6701d, Sections 38 and 40, V.A.C.S. Section 38(b) of that article provides that the maximum term of confinement for that offense is five years in the penitentiary. The court assessed punishment at eight years and placed appellant on probation for eight years.

■ A similar situation arose in *Pedraza v. State*, 562 S.W.2d 259 (Tex.Cr.App.1978). Pedraza was convicted of misdemeanor assault [V.T.C.A., Penal Code, Section 22.-01(a)(1)] and placed on probation for two years. The maximum term of confinement for that offense was one year. This Court found that although Article 42.13, Section 3(b), V.A.C.C.P., allowed imposition of a probationary term in excess of the actual punishment assessed, it did not allow imposition of a probationary term in excess of the maximum term of confinement allowable for the offense. We apply the same reasoning to felony probations. Although Article 42.12, Section 3, V.A.C.C.P., allows imposition of a probationary term without regard to the term of punishment assessed, as long as the probationary term is not greater than ten years, we believe that it does not allow the imposition of a probationary term in excess of the maximum term of confinement allowable for the offense.

■ We note additionally that before appellant was placed on probation, the judge imposed a term of eight years' imprisonment. Because this also exceeded the maximum term of confinement allowable for the offense, the case must be remanded

back to the trial court for a new assessment of punishment. *McCullough v. State,* — S.W.2d — (No. 351–83, December 7, 1983).

The cause is remanded for assessment of punishment by the trial court.

CLINTON, Judge, concurring.

I agree that the trial court erred in assessing a term of confinement in excess of the maximum authorized by law. For that reason alone the cause must be remanded. However, since Article 42.12, § 3, V.A.C. C.P. expressly authorizes the trial court "to fix the period of probation without regard to the term of punishment assessed" so long as it is not greater than ten years, I cannot say with confidence of the majority that the Legislature did not intend precisely that which it wrote and, therefore, I would not say that § 3 may be read to limit a period of probation to the maximum term of confinement allowed by the statute. We should reserve the issue until presented with a situation where a trial court assessed punishment at a term within the statutory maximum but fixed a period of probation longer than the maximum but still less than ten years.

With that understanding I concur in the judgment of the Court.